## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**STEPHEN P. STARCESKI**,

     Plaintiff,

v.                            Case No. 8:22-cv-962-WFJ-CPT

**UNITED VAN LINES, LLC**,

     Defendant.

_____/

## ORDER

Before the Court is Defendant United Van Lines, LLC's ("United") Motion for Partial Summary Judgment (Dkt. 81). Plaintiff Stephen Starceski has responded in opposition (Dkt. 98). Upon due consideration, the Court grants United's Motion.

## BACKGROUND

On September 1, 2021, Mr. Starceski contracted with United to transport his household goods from California to Florida. Dkt. 7-1 at 16. United subsequently issued Mr. Starceski "Order for Service/Bill of Lading U0187-00402-1" (the "Bill of Lading") and set the weight of Mr. Starceski's load at 13,499 pounds. *Id.* at 14. Instead of purchasing full replacement value protection, Mr. Starceski opted to accept United's free-of-charge base shipment protection of $0.60 per pound. *Id.* at 15.

On January 18, 2022, after a roughly four-month period of storage, United delivered the first portion of Mr. Starceski's goods to Florida. Dkt. 49 at 7; Dkt. 53 at 4. The remaining portion was never delivered. Dkt. 53 at 5. United claims that "[o]n or about January 18, 2022, during the interstate transport of [Mr. Starceski's] second load, the vehicle hauling [Mr. Starceski's] remaining two containers caught fire." *Id.* at 5. Mr. Starceski, on the other hand, suggests that United's employees may have "simply go[ne] shopping." Dkt. 49 at 2.

On April 26, 2022, Mr. Starceski filed the instant suit. Dkt. 3. After a series of motions to dismiss and amended complaints, Mr. Starceski is left with a single Carmack Amendment, 49 U.S.C. § 14076(a)(1) claim against United.[1] United now moves for partial summary judgment on the issue of damages. Dkt. 81. United avers that its liability is limited to $8,099.40 ($0.60 x 13,499 lbs. = $8,099.40). *Id.* at 1.

---

[1] Mr. Starceski brought his original Complaint against United on April 26, 2022. Dkt. 3. The next day, Mr. Starceski filed a "Corrected Complaint." Dkt. 7. On May 23, 2022, Mr. Starceski filed an Amended Complaint. Dkt. 10. Then, on July 1, 2022, Mr. Starceski filed a Second Amended Complaint which brought twenty-four counts against seven entities and individuals. Dkt. 11 at 7–112. United, as well as former Defendants United Van Lines International and Valerie Pacer, moved to dismiss Mr. Starceski's Second Amended Complaint in late August 2022. Dkt. 13; Dkt. 16. The Court granted both motions, dismissing various claims with prejudice and other claims without prejudice due to the shotgun-nature of Mr. Starceski's Second Amended Complaint. Dkt. 44; Dkt. 45. The Court granted Mr. Starceski one "final attempt to amend his complaint" in light of the Court's Order. *Id.* at 10–11. On November 21, 2022, Mr. Starceski filed his Third Amended Complaint. Dkt. 49. Therein, Mr. Starceski brought three claims: (1) Count I—cause of action under the Carmack Amendment against United; (2) Count II—cause of action under the Carmack Amendment against Unigroup, LLC; and (3) Count III—cause of action for negligence against Unigroup, LLC and Nadia A. Gajardo. *Id.* at 7–19. Upon United's renewed motion to dismiss, the Court found that Mr. Starceski had properly pled a Carmack claim against it. Dkt. 61 at 5. The Court nevertheless dismissed Mr. Starceski's claims against former Defendants Unigroup, LLC and Nadia Gajardo approximately two weeks later for failure to prosecute. Dkt. 68.

2

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine factual dispute. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most favorable to the non-moving party. *Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007). In addition, the Court must resolve any reasonable doubts in the non-moving party's favor. *Id.* Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DICSUSSION

The Carmack Amendment generally provides that an interstate motor carrier is liable for "actual loss or injury to the property" at issue. § 14706(a). A carrier may, however, limit liability "to a value established . . . by a written agreement." § 14706(f)(1). To properly do so, a carrier must show that it: 1) maintained a tariff within the prescribed guidelines of the Interstate Commerce Commission; 2) gave the shipper a reasonable opportunity to choose between multiple levels of liability protection; 3) obtained the shipper's agreement as to liability protection; and 4) issued a receipt or bill of lading prior to moving the shipment. *Essex Ins. Co. v. Barrett Moving & Storage, Inc.*, 885 F.3d 1292, 1306 (11th Cir. 2018); *Werner Enterprises, Inc. v. Westwind Mar. Int'l, Inc.*, 554 F.3d 1319, 1326 (11th Cir. 2009).

### I.     The Tariff

The Eleventh Circuit has explained that:

4

> [t]he first prong has been largely eliminated by statutory changes that abolished the Interstate Commerce Commission and replaced it with the Surface Transportation Board. . . . [C]arriers are now required to provide shippers on request with a written or electronic copy of the rates, classifications, rules, or practices applicable to the shipment or agreed to between the shipper and carrier.

*UPS Supply Chain Sols., Inc. v. Megatrux Transp., Inc.*, 750 F.3d 1282, 1286 n.3 (11th Cir. 2014) (citing *Werner*, 554 F.3d at 1326 n.6). This functionally means that "a carrier is now required to provide a shipper with the carrier's tariff if the shipper requests it[.]" *Sassy Doll Creations, Inc. v. Watkins Motor Lines, Inc.*, 331 F.3d 834, 841 (11th Cir. 2003). The goal of this requirement is to ensure that "a carrier wishing to limit its liability . . . [gave] the shipper a reasonable opportunity to choose between different levels of liability." *Id.* at 842. It specifically "leads back to the issue of whether [a carrier's] documents [gave the shipper] the requisite opportunity to choose between two or more levels of coverage" where the subject bill of lading is lacking in information pertinent to liability coverage options. *Id.*

Here, notwithstanding United's affidavits to the contrary, Dkt. 81-2 at 3; Dkt. 81-8 at 1, Mr. Starceski claims that, "[o]n several occasions between the time my items were loaded onto the truck and throughout the course of the initiation of this trial[,] I requested a tariff from [United]," Dkt. 98-1 at 2. Mr. Starceski maintains that "[n]o tariff was provided in a timely matter." *Id.* Mr. Starceski consequently argues that a material issue of fact exists concerning United's liability.

5

The Court disagrees. To begin with, Mr. Starceski signed the Bill of Lading on September 1, 2021, Dkt. 7-1 at 15, and United loaded his goods for storage on September 8, 2021, Dkt. 49 at 6. It follows that Mr. Starceski did not request United's tariff until *at least* one week after he had entered into a binding contract with United under which he agreed to pay less for limited liability protection. Dkt. 7-1 at 15. Given this, United's tariff would not have altered the information available to Mr. Starceski at the time he contracted for the lower price and coverage. Nor would the tariff have impacted his ability to choose between liability coverage options. This is not to mention, moreover, that Mr. Starceski was provided instructions for accessing the subject tariff prior to executing the Bill of Lading. The information was present on the Bill of Lading itself. *See* Dkt. 7-1 at 17; *see also id.* at 15 (Mr. Starceski acknowledging that he received a copy of the "Your Rights and Responsibilities When you Move" brochure); Dkt. 81-3 at 41 (the provision of the "Your Rights and Responsibilities When You Move" brochure which explains that United's tariff can be accessed at www.UnitedVanLines.com).[2]

More importantly, though, the instant situation is not one where "the bill of lading or other relevant document does not contain a declared value box," thus

---

[2] When one enters "United Van Lines tariff" into a web browser, United's "Nationwide Interstate Relocation Tariff" is the first result. United Van Lines, LLC, https://www.unitedvanlines.com/wp-content/uploads/2022/12/UMT1-Tariff-BASE-Complete-Issued-12-05-22-Effective-12-05-22.pdf (last visited Aug. 22, 2023).

depriving the shipper of a "reasonable opportunity to choose a higher level of liability." *See Sassy Doll*, 331 F.3d at 842. The Bill of Lading explicitly valued Mr. Starceski's shipment at $81,000 and gave him two options: 1) pay $27,943.46 to have the shipment delivered and covered at full replacement value, or 2) pay $27,024.26 and have the shipment delivered and covered at $0.60 per pound. Dkt. 7-1 at 15. Mr. Starceski chose the latter. This being the case, Mr. Starceski cannot plausibly claim that he was denied a meaningful opportunity to choose between coverage levels. He could determine from the Bill of Lading alone "exactly how to indicate a desire for full value coverage." *Sassy Doll*, 331 F.3d at 843. The Court will not upset the parties' contractual agreement on an alleged technicality that "has been largely eliminated" and has no bearing on the ultimate issue of whether Mr. Starceski was given a reasonable opportunity to choose between different levels of coverage. *Megatrux*, 750 F.3d at 1286 n.3; *see also Sassy Doll*, 331 F.3d at 842.

## II.    Reasonable Opportunity and Agreement

This brings the Court to Mr. Starceski's arguments concerning informed consent. Mr. Starceski essentially argues that a second material issue of fact exists as to United's liability limitation because "[United] failed to properly inform [Mr. Starceski] of their potential liability levels and neglected to disclose any waiver of full replacement value" before he signed the Bill of Lading. Dkt. 98-1 at 2.

This contention is wholly refuted by the evidence in the record. After explaining Mr. Starceski's full replacement value protection option, the Bill of Lading explicitly explained the following:

> **OPTION 2 - WAIVER of Full (Replacement) Value Protection. This LOWER level of protection is provided at no additional cost beyond the base rate; however it provides only MINIMAL protection** that is considerably less than the average value of household goods. Under this **option, a claim for any article that may be lost, destroyed, or damaged while in your mover's custody will be settled based on the weight of the individual article multiplied by 60 cents. For example, the settlement of an audio component valued at $1000 that weighs 10 pounds would be $6.00 (10 pounds time 60 cents).**

Dkt. 7-1 at 15 (emphasis in original). Directly above Mr. Starceski's signature line, the Bill of Lading then provided an acknowledgement stating that "I have: 1) **WAIVED the Full (Replacement) level of protection for which I have received an estimate of charges**; and 2) **received a copy of the "Your Rights and Responsibilities When You Move"** brochure explaining these provisions." *Id.* The "Your Rights and Responsibilities When You Move" brochure provided to Mr. Starceski also contained similar language. *See* Dkt. 81-3 at 11–12.

Simply put, there is no genuine issue of fact concerning whether Mr. Starceski was adequately informed, whether Mr. Starceski had a meaningful opportunity to choose between multiple coverage levels, or whether Mr. Starceski in fact knowingly and willingly contracted for coverage at $0.60 per pound. There is also no dispute that United issued a receipt or bill of lading to Mr. Starceski prior to

moving the shipment. United is therefore entitled to summary judgment on the issue of damages.

## CONCLUSION

Accordingly, it is hereby **ORDERED** and **ADJUDGED**:

(1)  United's Motion for Partial Summary Judgment (Dkt. 81) is **GRANTED**.

(2)  United's liability is limited to $0.60 per pound for the goods lost or otherwise destroyed in transit.

**DONE AND ORDERED** at Tampa, Florida, on August 22, 2023.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record

9